# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

ALLEN'S EX'X v. SHRIVER'S ADM'R AND ALS.

DECEMBER 3d, 1885.

1. VENDOR AND VENDEE—*Sales in gross—Relief.*—Sale of particular tract, without specification of quantity or price per acre, is a contract of hazard, wherein such party takes the risk of excess or deficiency ; and there can be no relief to either, whatever the actual quantity, unless the adverse party has made false suggestion or concealment of facts within his knowledge.
2. PERSONAL REPRESENTATIVES—*Payments—Credits.*—An executor is entitled to credit in his official account for money of the estate, which he paid his successor before the latter's qualification, and for which the latter charges himself afterwards in his official account.
3. CHANCERY PRACTICE—*Costs—Fees.*—Upon the final determination of a cause, the decree for costs must follow the recovery, and go to the party who substantially prevails. And upon no principle can the attorneys of the losing party be adjudged fees out of the recovery of the winning party.

Appeal from decrees of chancery court of the city of Richmond, rendered August 10th, 1869; May 14th, 1883; June 23rd, 1883, and July 11th, 1883, respectively, in the two causes, heard together, therein pending, under the style of *Jessup* v. *Allen,* and of *Roland's Administrator* v. *Burt's Executor.*

The objects of the suits were to settle the partnership accounts of Roland & Shriver, and the accounts of the personal representatives of Jacob M. Shriver, deceased, and to ascertain and satisfy to William Allen's estate the balance due it for a tract of about 3,000 acres of land, sold in the lifetime of the vendor and vendees, by William Allen to Roland &

Shriver, and for other purposes.   The decrees were adverse to the personal representatives of William Allen and of William S. Burt, and they obtained an appeal and *supersedeas* from one of the judges of this court.

Opinion states the case.

*Carrington & Fitzhugh,* and *W. J. C. Gregory,* for the appellants.

*F. M. Conner,* for the appellees.

LACY, J., delivered the opinion of the court.

The bill was filed in the suit *Jessup* v. *Allen* in June, 1866, in the circuit court of Richmond city, and upon the institution of the chancery court, under the new Constitution, in 1870, the suit was removed to that court, from which court it has once before been before this court on appeal.

The bill, which was by James Jessup, executor of Jacob M. Shriver, deceased, and in his own right, set forth that sometime in the year 1859, and probably towards its close, Jacob M. Shriver formed a co-partnership with one William C. Roland for the purpose of carrying on the wood and lumber business, and kindred branches of business on and from a tract of land in Surry county, Virginia; that the style of the firm was Roland & Shriver, and the partners were equally interested in the business.

The chief item of property in which Roland & Shriver became interested as partners, was a large body of land, in several tracts, containing about three thousand acres, which was purchased by them of William Allen, Esq., of Claremont, Virginia.   That the purchase was made in December, 1859.   The price, $15,545, was payable in four equal annual payments of $3,886.25, with

interest from time of sale. That large payments were made on the land. That Mr. Allen rented a grist-mill to William C. Roland, which was on his Claremont land, at $1,000 per annum for the year 1861, and after that year for one-half the profits of the mill. That the partnership business of Roland and Shriver was continued until June, 1862, when Roland was killed by an accident, and Shriver, as surviving partner, took charge of the business until October of the same year, when he was murdered by some negroes at Jamestown Island. That during the time between the death of Roland and the death of Shriver, a large quantity of lumber was delivered by Shriver to the Confederate government, *under compulsion,* for which he was never paid, amounting in value to some $8,000. That upon the death of Shriver, Allen qualified as his administrator in 1863. That Shriver left a will, which was afterwards discovered, in which James Jessup was appointed executor, and that upon the probate of this will, and the qualification thereunder of Jessup, Allen surrendered to him the estate of Shriver. That a large quantity of lumber was still on the land severed, but unsold. The bill asked for a settlement of all proper accounts arising under the transactions, above stated, and for a sale of the land as then necessary. The contract and intended deed between the parties are filed, unsigned however, but admitted in the cause to constitute the agreements of the parties, and were exhibited with the bill. Allen answered, admitting the allegations of the bill, except as to the execution of the bonds, and admitting payments on the land to about four thousand dollars. The widow and administratrix of Roland answered, admitting the partnership and the purchase of the land, claiming that the land had been paid for except the last bond, or the last instalment of the purchase money, which still remained due, and claimed that her late husband had made larger payments than Shriver, and that his half of the land had been paid for, &c.

At the March term of the circuit court of Richmond, 1867, the cause was by decree referred to one of the commissioners of the court for the necessary accounts, looking to a settlement of the said transactions, and to a sale of the land for division or distribution of the proceeds, as the case might be developed upon evidence.

The commissioner made his report January 20, 1869, reporting several accounts, designated "A," "B," "C," "D," "E," "F," and "G."

"A" was an account between Roland in his lifetime with Wm. Allen, showing a balance due William Allen therein of $23.40$\frac{1}{2}$.

"B" was an account between Shriver & Allen, showing a balance due Allen of $516.69.

"C" was an account between Roland & Shriver, as partners during their lives, with Allen, showing a balance due R. & S. of $3,484.55$\frac{1}{4}$.

"D" was an account between the estate of Wm. C. Roland and S. S. Roland, his administratrix, showing a balance due from the administratrix to the estate of $875.46.

"E" was an account between Shriver's estate and Allen as administrator, showing a balance due the estate from Allen of $5,231.25.

"F" was an account between the estate of Shriver and Jessup, his executor, showing a balance due from the said executor to the estate of $532.00.

"G" was an account of the balance due on the purchase of the land from Roland & Shriver to William Allen, showing a balance still due on the land by Roland & Shriver to William Allen of $10,247.48.

The said commissioner reported that on account of the sudden death of both Roland and Shriver in the midst of the period of the late war, their books and papers were left in a

very confused, not to say inextricable, condition, and this condition was rendered still more confused by the destruction of some of their books and papers and the mutilation of others in the effort to prevent them from falling into the hands of the raiding parties of the Federal army; that for these reasons he was unable to state any partnership accounts between Roland & Shriver; that it was clear, however, that they were equal partners; that as such partners they purchased from William Allen the tract of land in the bill and proceedings mentioned, containing about three thousand acres, at the price of $15,545.00.

That the effects of Shriver, which came to Allen's hands as administrator, as embraced in account "E," were partnership effects and so were carried to account "G," and credited on the amount due for the land. The amount ascertained in account "C" as due by Allen to Roland & Shriver, as partners in their lifetime, was in like manner carried to account "G," and credited on the amount due for the land. In like manner the amounts found due in accounts "A" and "B" are debited against Roland & Shriver in the said account "G," and the balance due on the land thus ascertained and reported. On the 26th of February, 1869, upon the coming in of this report, the same was received and confirmed, and a sale of the land decreed to pay the balance found due to Allen.

On the 26th of April, 1869, S. S. Roland filed her bill, praying to have the sale of the land enjoined. This was refused.

On the 27th of May, 1869, the special commissioner appointed to make the sale, reported a sale to one Saunders, who refused to comply. This sale was at an estimate of quantity of thirty-one hundred and nine acres, but was made without regard to quantity, the purchaser to take the tract and pay for that number of acres at $3.85, making $11,969.65. This is the first statement to be found among the papers of

any exact quantity of land. This purchaser objected to the title, and ultimately was released, at the July term, 1869. On the 24th of July a new sale was ordered..

On the tenth day of August following, upon the affidavit of S. S. Roland, the court, upon the statements in the report, holding that the report of Commissioner Evans was stated at a time when it was difficult, if not impossible, to state the same correctly. And it appearing from the said affidavit of Mrs. Roland that there are manifest errors and incompletenesses in the said report of Commissioner Evans, the cause was recommitted to another commissioner, who was empowered to summon the parties and witnesses before him and *compel* the submission of such books and papers as may be pertinent to the cause. This commissioner took some testimony, but made no report.

On the 21st of April, 1870, in the chancery court of Richmond, to which the cause had been transferred on the institution of that court in that year, the cause was referred to a commissioner of the court, who was directed to proceed to execute the decree of the 10th of August, 1869. This commissioner made no report.

On the 12th day of October, 1871, another decree was entered in the cause, referring it to another commissioner to execute the decree of August 10th, 1869. On the 4th of December, 1872, one of the commissioners of the court made a report in the cause. He reported that he had made many abortive efforts in the cause to take the accounts ordered, but although he had taken no further evidence, he had examined the papers in the cause, and Commissioner Evans' report, and nothing having been brought before him to surcharge or correct the same, that he concurs in the former reports.

On the 17th day of December, following, the chancery court of Richmond entered a decree confirming the commissioner's

report, and decreeing to Wm. Allen the balance already stated as found due to him by Commissioner Evans, and directing a sale of the land, in the city of Richmond, authorizing Allen to buy without giving bond, &c. On the 7th day of April, 1873, Mrs. Roland filed her petition, alleging surprise in the filing of the said report, and the rendering of the decree confirming the same, and praying a recommittal to a special commissioner.

On the 10th of May, 1873, the special commissioners appointed to sell the land, reported the sale of the same; to which report Mrs. Roland filed three exceptions; and on the same day filed another petition, seeking to set aside the decree of December 17, 1872, and praying a recommittal of the cause to a commissioner, setting forth at length the alleged errors apparent in the report of Commissioner Evans.

On the 13th of May, 1873, the court overruled the exceptions of Mrs. Roland, overruled her petition for a rehearing of the decree, and confirmed the reported sale; and directed a deed upon the payment of the purchase money.

From this decree Mrs. Roland appealed to this court. An appeal was allowed and *supersedeas* awarded her as to so much only of the decrees complained of as ascertains the balance due from her decedent's estate to William Allen to be the sum of $10,247.48, as of the 3d day of November, 1866; but it was expressly provided that the sale of the land was not to be affected by the appeal. This was in 1873.

On the 29th day of November, 1877, the cause was decided in this court. The decree of the 13th day of May, 1873, denying the petition to rehear the decree of December 17th, 1872, was reversed. The decree of August 10th, 1869, was affirmed, and was held to have, in effect, set aside the decree of February 20th, 1869, confirming the report of Commissioner Evans. The decree of the 17th day of December, 1872, so far as it con-

firmed the report of commissioner was reversed, and the cause was remanded to the chancery court of Richmond city, with instructions to recommit the same to a commissioner of the court, with directions to proceed to execute the decree of *August* 10*th*, 1873.

The effect of this decision in this court was to recommit the whole case to a commissioner of the court, to take the necessary accounts and make report upon the fullest examination of witnesses, and of books, papers, vouchers and accounts between the parties as if the account had never been taken before and reported by Commissioner Evans or another commissioner; and this is the course which has been pursued in the court below, with varied fortunes to the parties litigant, as the several steps have been there taken.

The sale of the land was not disturbed by that appeal, and the contest has been between the parties as to the proper and rightful disposition of the proceeds of the land.

Without following the cause further in its various stages in detail, taking the decree of this court and its affirmance of the decree of August 10th, 1869, recommitting the cause for new accounts at the starting point, we will remark that the cause was referred to a commissioner in the chancery court, who made a report, to which both sides excepted, and the report having been modified by the court, according to the exceptions on both sides in some respects, a result was adopted which appellants say shows an enormous discrepancy between the conclusion reached by the first commissioner and that reached by the last, as modified by the court. This result, they say, |has been to wipe out the balance of $10,247.48, in favor of Allen, found by the first commissioner, and in addition to bring Allen in debt nearly $4,000. Allowing for interest, it seems there is a variance between the two reports upon the same subject matter of over $20,000.00. From the decree of the chancery court confirming

the report of O. G. Kean, who took the last accounts and stated the last report in this cause, this appeal is taken, and we will now proceed to consider the case upon the errors assigned in this appeal.

No exception can now be entertained in this court to the decree of August 10, 1869, that decree having been affirmed by this court on the first appeal in this cause. The first error assigned under the decree of the chancery court of Richmond city, of May 14th, 1883, is that the court held that there was a deficiency in quantity of the tract of land sold by William Allen to Roland & Shriver, of one hundred and ninety-three acres, and directed account M, of Commissioner Kean, to be amended, and one hundred and ninety-three acres to be charged against Allen, at $4.91, amounting to $949.42, with interest from time of sale, amounting to $1,186.79, aggregating $2,136.19, which was deducted from the original purchase money of $15,545.00, upon the ground that this sale was a sale by the acre, at the price of $4.91 per acre.

The admitted agreement of the parties is found in the unexecuted paper writing, called Exhibit B, to be found on page sixteen of the record. By this paper Allen sells six tracts of land; in four of them the number of acres is stated; in the other two it is not stated. The contract does not state what the quantity of land is, and the aggregate number of acres is not stated. What the quantity of land was, or the number of acres they contained, is not stated at all. The commissioners of sale only sold twenty-nine hundred and sixty-seven acres, that quantity being without dispute as to the title. The only cloud upon the title was on the part of Allen's vendee, Mrs. S. S. Roland, setting up a claim to hold a quantity of land by the purchase of Roland from some other person; but she only claims one hundred and four acres. The testimony taken in the cause does not show any deficiency. It is not proved in

the cause that the land claimed by Mrs. Roland is any part of the Allen land. But, as has been said, there was no sale by the acre; there is no mention of the aggregate number of acres in the contract of sale, nor in the original bill, nor the answer there, and the notes of counsel on both sides in the first appeal, claiming about three thousand acres; and there is nothing to show, nor in any manner to indicate, that the sale was by the acre; nor that the number of acres, nor the value per acre, entered into the contract between the parties as an inducement to the same on either side, which was in gross, or that there was any fraudulent concealment on the part of the vendor of the real quantity of land sold; or, if there was any deficiency in any way in the quantity, as contemplated by the parties, that one party was better informed than the other as to the matter.

Where the contract is for a tract or parcel of land in gross, without reference to its quantity, whatever the deficiency, no allowance is made to either party, even where the deficiency is great. In the case of *Tucker* v. *Cocke,* 2 Rand. 51, the deficiency was a thousand acres. In *Russell* v. *Keeran,* 8 Leigh, 9, the deficiency amounted to one hundred acres in a tract of four or five hundred acres. See also *Pendleton's Ex'ors* v. *Stewart,* 5 Call. 1; *Hull* v. *Cunningham,* 1 Munf. 330. The principle is, that when the real contract is to sell a tract of land for so many acres as it may contain, more or less, fully understood to be so, the purchaser takes the tract at the risk of gain or loss, by deficiency or excess. *Caldwell* v. *Craig,* 21 Gratt. 132; 2 Lom. Dig. 63; 2 Minor's Inst. 794; *Grantland* v. *Wright,* 2 Munf. 179; *Weaver* v. *Carter,* 10 Leigh, 37.

How, indeed, can it be said that a sale is by the acre, when the number of acres is not mentioned in the contract, nor the price per acre? In this case Allen sold six designated tracts by name, the number of acres mentioned as to some and not

as to others.    The alleged deficiency is claimed to exist in one of these tracts, but the contract was not for the sale of one tract of so many acres, but of six tracts, the number of acres not stated.    We think this was a sale in gross, and in so far a contract of hazard in contemplation of the contracting parties; and, if there had been this supposed deficiency, it was a loss in contemplation of the parties within the hazard of their contract.    But, as has been said, it has not been established that there is any deficiency, and there has been no adverse claim to this land, and no dispute concerning it, except on the question raised by the vendee under a different purchase, and this is wanting in proof.

We are of opinion to reverse the chancery court upon this assignment of error here.

The second assignment of error will not require any special consideration, as it is disposed of by the others.

The third is, that Allen is charged with four hundred and eighty-four cords of wood, at $3.50 per cord, bought by him of Roland & Shriver, making $1,694, which Commissioner Evans had credited him with.    We think this was a plain oversight on the part of Commissioner Evans, and that the view taken by Commissioner Kean on this point and sustained by the court is inevitable; Allen charges himself with it.    The account of Roland & Shriver, with the Claremont railroad, charges them with freight on this wood to the wharf, and *credits* them with the sale of it; and doubtless it was charged against them by Commissioner Evans, because it was inartistically entered on the same page with the debits, and the credit was not observed. But if it was their wood, so that they had to pay the freight on it, how could they buy it from themselves at the end of the trip and owe Allen for it?    This ruling of the chancery court is plainly right, and must be affirmed.

The fourth assignment of error here is the disallowance of

the $500, paid by Allen, as administrator of Shriver, to Jessup, the executor, before his qualification as executor. This money was actually paid, and Jessup, the executor, acknowledged the receipt of it, and charged himself with it after his qualification, and that it was paid to him before his qualification is immaterial. It was in his hands, and in the right hands, as soon as he qualified, and the chancery court erred in charging Allen with its repayment. See *Thurston* v. *Sinclair*, 79 Va.; *Freakley* v. *Fox*, 9 Barn. and Cres. 130; *Bryant* v. *Smith*, 10 Cushing, 169; *Utterback* v. *Cooper*, 28 Gratt. 233; *Harvey* v. *Steptoe*, 17 Gratt. 289; *Farmer* v. *Gates*, 23 Gratt. 145; *Brown* v. *Lambert*, 33 Gratt. 256.

The fifth assignment of error is that costs were adjudged against Allen. The question of costs is referrable to the result of the litigation in this case; it can in no respect be properly regarded as a friendly suit; and the decree, giving costs, is reversed, the question of costs to depend in that court upon the final determination between the parties; and the costs must follow the recovery according to law.

The sixth assignment of error is that the counsel of Allen should be paid out of the recovery of Mrs. Roland in this suit. There is no principle upon which Mrs. Roland can be called upon to pay them any fees; but we understand this point as not insisted on in the argument here.

The seventh assignment is as to the exceptions taken by the appellants in the court below. Some of these require a brief notice. The first is disposed of under the third assignment of error. The second exception contains six items. The first item was stricken out by the court below. The second is sustained by Allen's own books, and the exception to that is overruled. The third is overruled for the same reason. The fourth and fifth items are also overruled, as they appear on Allen's books. The sixth item appears to be already corrected.

The third exception is overruled, the several items appearing to be sustained by the evidence.

The fourth exception was sustained below, as to the one hundred and twenty dollars paid Jessup after he had qualified. The $500, the second item of this exception, has already been considered under the fourth assignment of error.

The fifth exception is overruled, it appearing to be proved by the evidence. It is admitted to be due from Allen either to Shriver, or to Roland and Shriver. That is to be a charge against him in any event.

Their sixth exception has been disposed of under the third assignment of error.

The item $820, excepted to in their seventh exception, is sustained by Allen's books and proved by Higgins in his deposition, and the item was properly allowed by the court below.

As to Roland & Shriver's eighth exception, it depends upon the weight to be attached to the paper B. V. This paper is a leaf torn from the books of Roland & Shriver; the residue of the book is destroyed. This leaf is torn and defaced—scarcely legible at all—and has on it pencil memoranda not claimed to belong to it. The clerk certifies that it is almost illegible, but copied as accurately as possible. We are of opinion that this paper is properly excluded by the court below. It is not evidence of such a character that it can be relied on, and it must be rejected without any reference to the questions which would arise if the complete book of Roland & Shriver should be presented as evidence in legible form. It must be rejected as evidence for uncertainty and incompleteness; it would be rejected if the complete book should be admitted, which we do not intimate.

Roland's first and second exceptions have been passed on in considering the first assignment of error by the appellants.

Roland's fourth exception, claiming $3.50 per cord for two

hundred and eighty cords of wood shipped, as the Claremont railroad book showed, by the vessels D. E. Sawyer and Ira Bliss, was properly overruled by the chancery court. There is no evidence whatever to show that Allen bought, nor, indeed, that anybody bought it at any price. Allen bought four hundred and eighty-four cords of wood at $3.50, and it was charged to him by Shriver, and he charged himself with it. But this wood Shriver did not charge to him, and it appears affirmatively that he did not buy it, but that it was shipped by these vessels doubtless to Northern markets and for account of the owners. There is nothing to connect it with any other person.

We can see in the evidence no proof of Allen's connection with the note of Roland & Shriver for $1,225, discounted by Selden & Miller. The court below did not err in overruling this exception. The note may have been paid by Roland & Shriver, or it may have been paid by Selden & Miller, and it may not have been paid at all.

This disposes of all the questions raised on this appeal. The decrees of the chancery court, by decree entered here, will be reversed in part and affirmed in part, in accordance with the foregoing views, and the cause will be remanded to the said chancery court of Richmond city, for another account to be there taken, correcting the errors contained in the last settled accounts in the said court; and the appellants, having substantially prevailed here, will be decreed their costs.

REVERSED IN PART AND AFFIRMED IN PART.