# Staunton.

## FLICK v. THE COMMONWEALTH.

### SEPTEMBER 21, 1899.

1. SEDUCTION—*Chastity—Presumption—Burden of Proof.*—In a prosecution for felonious seduction, the chastity of the prosecutrix is presumed by law, and the burden of disproving it lies on the accused.

2. SEDUCTION—*What Constitutes.*—What constitutes "seduction" within the meaning of section 3677 of the Code cannot be defined with precision. Each case must be determined by its own circumstances. The crime may be complete, although in the particular case "flattery, false promises, artifice, urgent importunity based upon professions of attachment, and the like, for the woman" did not conspire to cause the surrender of her person and chastity to her alleged seducer. But there must be something more than sexual intercourse proved. A female of previous chaste character must have been led astray from the paths of virtue. This is the offence.

3. SEDUCTION—*Confessions—Doubtful Meaning—Province of Jury—Instructions.*—Where a prisoner charged with felonious seduction hears the warrant of arrest read, admits his guilt and pleads guilty before the committing magistrate, and also voluntarily states to other persons at other times that it was all his fault, but on his trial testifies that he did not mean to confess, and was not guilty of, the *seduction* charged, it is not error to instruct the jury "that it is their province to consider all the circumstances under which the alleged admissions were made, and determine their exact nature, import and meaning"; and to refuse to instruct them further that if they believe from the evidence that the admissions of the accused that he was guilty meant only, as used by him, that he was guilty of having sexual intercourse with the prosecutrix, then such admissions can be considered by them as corroborating evidence of the illicit connection alone, and not as corroborating evidence of the alleged seduction.

4. SEDUCTION—*Good Character for Industry and Veracity.*—In a prosecution for felonious seduction evidence of good character for industry

and veracity is not relevant to the issue, as it throws no light upon the intercourse of a man with women, and will not support an instruction that the jury have the right, in their discretion, to acquit the prisoner, if they believe the evidence of his good character is sufficient to raise a reasonable doubt as to his guilt.

5. EVIDENCE—*Order of Introduction—Appeal and Error.*—The order in which evidence is introduced is a matter largely in the discretion of the trial court, for which this court will not reverse the judgment of the trial court save in very exceptional cases. It will not reverse merely because evidence proper in chief was introduced in rebuttal.

6. EVIDENCE—*Irrelevancy—Exclusion.*—If a witness, in giving the statement of another, introduces irrelevant statements, the proper course to pursue is to ask the court to exclude so much of the statement as is not admissible.

Error to a judgment of the Circuit Court of Augusta county, rendered April 5, 1899, affirming the judgment of the County Court of said county, by which the plaintiff in error was sentenced to the penitentiary for five years, for felonious seduction.

*Affirmed.*

The opinion states the case.

*Curry & Glenn, J., J. L. & R. Bumgardner,* and *Gray & Timberlake,* for the plaintiff in error.

*Attorney-General A. J. Montague,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Joseph L. Flick, a married man, was indicted in the County Court of Augusta county for seducing and having illicit connection with one Augusta V. Wise, an unmarried female of previous chaste character. He was found guilty of the offence by the jury, and sentenced to the penitentiary for five years. During the progress of the trial sundry exceptions were taken to rulings of the court, and a writ of error to the judgment of the County Court was granted by the Circuit Court, and the case is now before us upon a writ of error to a judgment of that court.

The first bill of exceptions presented by the record is to the refusal of the court to give an instruction asked by the defendant, which is as follows:

" The court instructs the jury that, in order to find the prisoner guilty as charged in the indictment, they must find from the evidence beyond a reasonable doubt: First, that the prosecutrix was, previous to the alleged seduction, of chaste character; second, that she was seduced by the prisoner, that is to say, he used arts, blandishments, wiles and artifices, corrupted her, and caused her to be drawn aside from the path of virtue, which she was pursuing, gaining her affections, polluting her mind and thoughts, and by these means inducing her to have illicit intercourse with him. And, third, the jury are further told that if, on the contrary, she had illicit intercourse with the prisoner, not for the above reasons, but for some other reason, such as the gratification of her sexual desire, then the jury are told that in law this is no seduction, and they must find him not guilty."

That instruction tells the jury that, in order to find the prisoner guilty as charged in the indictment, they must find from the evidence beyond a reasonable doubt that the prosecutrix was, previous to the alleged seduction, of chaste character. This court held in *Barker's Case*, 90 Va. 820, that in a prosecution for felonious seduction, the chastity of the prosecutrix is presumed by law, and the burden of disproving it lies on the accused. In that case Judge Lewis, after an examination of the authorities, quotes with approbation the language of Judge Cooley: " The presumption of law should be in accordance with the general fact; and whenever it shall be true of any country that the women, as a general fact, are not chaste, the foundations of civil society will be wholly broken up. Fortunately, in our country, an unchaste female is comparatively a rare exception to the general rule; and whoever relies upon the existence of the exception in a particular case should be required to prove it."

That proposition was reaffirmed in *Mills* v. *Commonwealth*, 93 Va. 815, and may be considered the settled law of this State. Such being the case, the instruction offered would have been misleading. There was no evidence in the record of the unchastity of the prosecutrix; nothing which tended to impair the force of the presumption in her favor, and the jury were, therefore, under no obligation to consider the evidence in order to determine the first element of the crime wherewith the prisoner was charged.

The next instruction asked by the defendant, and refused by the court, is as follows:

" The court instructs the jury that the word "seduction," when applied to the conduct of a man towards a female, means the use of some influence, promise, art, or means on his part, by which he induces the woman to surrender her chastity and her virtue to his embraces. There must be something more than mere reluctance on the part of the woman to commit the act, and her consent must be obtained by flattery, false promises, artifice, urgent importunity, based upon professions of attachment, or the like, for the woman, and that, relying solely on said promises or professsions of flattery or artifice or importunity, she surrendered her person and chastity to her alleged seducer; and that, relying and being influenced solely by such promises, flattery, artifice, and urgent importunity, she then being chaste, surrendered her person and chastity to her alleged seducer."

In lieu thereof, the court instructed the jury that " seduction, as applied to this case, is the offence of inducing an unmarried female, of previous chaste character, by a married man, to consent to unlawful sexual intercourse by enticements and influences which overcome her scruples."

It must be borne in mind that the offence here charged is seduction by a married man, which of itself excludes many of the

arts, wiles, professions, and promises which may be brought to bear by a single man to establish a footing and influence with a woman, and thus become the means by which he accomplishes her ruin. As was said in a note to *Mills v. Commonwealth*, 2 Va. Law Reg. 679: " Illicit intercourse alone, during the existence of a marriage engagement, is insufficient—there must be the ' seduction ' besides. We understand the court to so decide in approving the third instruction, that she must have yielded ' by reason of the promise '; in other words, that seduction " under ' promise of marriage is tantamount to illicit connection accomplished ' by means of ' such promise. Many of the courts have taken a narrower view of the statute, and by requiring proofs of ' arts, blandishments and artifice,' or deceits and false promises, have made comparatively easy the way of the seducer."

In all cases arising under section 3677 of the Code, it is conceded that there must be seduction superadded to illicit connection to constitute the crime. To seduce is to lead astray from the path of virtue. It does not consist in arts and blandishments. They are the means by which the crime is accomplished, and not the crime itself, and therefore Bishop says: " In determining whether or not there is a sufficient seducing, the precise statutory terms should be regarded. Aside from such terms, the kind and extent of the seductive arts appear to depend less on absolute rule than on the circumstances of the particular case—among them the character, age, intelligence, and education of the woman. In general, if in fact they accomplish the object they are sufficient in law." Bish. Stat. Crimes, sec. 640.

Keeping in mind, therefore, the distinction between the crime and the methods by which it may be accomplished, it is obvious that the latter may be as various as the characters and environments of the parties, and are incapable of being brought within the terms of a definition, and it may be observed that to undertake to define with precision the conditions necessary to the per-

petration of the offence would tend, in the language above quoted from the *Law Register*, " to make comparatively easy the path ·of the seducer." It is better to leave each case to be determined by its own circumstances. The crime may be complete, although in a particular case " flattery, false promises, artifice, urgent importunity based upon professions of attachment, and the like, for the woman " did not conspire to cause the surrender of her per-· son and chastity to her alleged seducer. The court properly refused the instruction asked for, because it would have been misleading as applied to the facts of the case which the jury were ·called upon to consider. The instruction given by the court was quite sufficient to enable the jury intelligently to determine the guilt or innocence of the accused upon the evidence before them.

The third instruction offered by the defendant was properly refused. Its vice consists in requiring proof of the previous ·chaste character of the prosecutrix, when there had been no ·evidence impeaching her chastity.

The fourth instruction asked by the defendant was also refused by the court. The court was asked to instruct the jury " that in order to constitute and fix upon the defendant the crime charged against him in the indictment, it is not sufficient to establish sexual intercourse between the parties, but the Commonwealth must also show that the defendant accomplished his purpose by some artifice, or that the prosecutrix, Miss Wise, was induced to yield to his embraces by flattery or deception; and they are further instructed that if they believe from the evidence that the prosecutrix, Miss Wise, without being deceived, and without any false promises, deceit or artifice on the part of the defendant, voluntarily submitted to the connection, then they must find the defendant not guilty."

As was said in treating of the second instruction, there must doubtless be something more than sexual intercourse to establish the guilt of the defendant. There must be the seduction. A

female of previous chaste character must be led astray from the paths of virtue. That is the offence. As to the artifices, deceits, and promises by which the object of the seducer is accomplished, we shall add nothing to what we have already said. Indeed, it does not very distinctly appear why the instruction under consideration should have been offered, as it seems to us to be fully embraced in the one already considered. However, in lieu of it the court told the jury " that if they believe from the evidence that the prosecutrix was not seduced by the defendant, but voluntarily, and solely for the gratification of her sexual desires, or other reasons, submitted to the connection, then they must find the defendant not guilty." This is doubtless true, and seems to emphasize the instruction already given by the court, which was, in itself, sufficient to guide the jury in their deliberations.

The fifth bill of exceptions is to the refusal of the court to instruct the jury "that in a criminal case confessions and admissions of the accused should be received by them with great caution, and the court tells the jury that they must consider all the circumstances under which the alleged admissions were made and determine their exact nature, import, and meaning; and if the jury believe from the evidence in this case that the admissions of the accused that he was guilty meant only, as used by him, that he was guilty of having sexual intercourse with the prosecutrix, Augusta V. Wise, and causing her to become pregnant, then the court instructs the jury that such admissions of the accused can only be considered by them as corroborating evidence of the illicit connection alone, and not as corroborating evidence of the alleged seduction."

During the progress of the trial it was proved that the prisoner was taken before a justice of the peace; that the warrant of arrest was read to him, in which he was charged with having unlawfully and feloniously seduced and gotten with child the prosecutrix, Augusta V. Wise. Upon being asked, after hearing the warrant read, if he acknowledged his guilt, he said that he

did, and plead guilty to the charge.  To the father of the prose-cutrix, who said to him, " You have ruined me," he replied, " Yes; you would do me right if you would take that gun and kill me."  To Dr. Sellars he said, shortly after his arrest, " Tell Mrs. Wise to take care of Gussie; it was all my fault."  In all these confessions, voluntarily made, there is no qualification. They are clear, frank, unequivocal admissions of guilt of the crime wherewith he was charged.  When he had time to reflect upon it, and was speaking as a witness in his own behalf, he says that he only meant that he was guilty of illicit intercourse.  The court refused to give this instruction, and, in lieu thereof, told the jury " that in a criminal case admissions and confessions of the accused are admitted with caution, and the court tells the jury that it is their province to consider all the circumstances under which the alleged admissions were made and determine their exact nature, import and meaning," and this, we think, was a sufficient substitute for the instruction asked for by the defendant and refused by the court.  Under it the jury were authorized and required to consider all the testimony which bore upon the guilt of the accused, and tended to explain, limit, qualify, and determine the exact nature, import and meaning of the several admissions and confessions made by the prisoner, and weigh them in the light of all the surrounding circumstances as disclosed by the evidence.

The sixth bill of exceptions is to the refusal of the court to give an instruction in the following words:

" The court instructs the jury that, in arriving at a verdict in this case, they have a right to give such weight to the good character of the accused as they may deem proper, in considering it together with the other evidence in this case.  And the court further instructs the jury that they have the right in their dis-cretion to acquit the accused upon the evidence of his good char-acter, if they believe the evidence of his good character is suffi-

cient to raise a reasonable doubt as to his guilt, when all the evidence of the case is considered together."

There is evidence of the good character of the accused with respect to his industry and veracity, but none whaetver which throws any light upon his intercourse with women.

The seventh bill of exceptions is substantially identical with the sixth, and must share its fate.

After the evidence for the defence had been closed, Dr. Sellars was recalled and asked the following question: "On the night of the arrest did you have a conversation with the prisoner, and what did he say?" This question was objected to by the prisoner as improper and illegal in rebuttal, but the court overruled the objection, and the witness answered as follows: "He talked freely to me and said that he got caught at last; that he had been at this work for a long time; that he was in the habit of getting young girls out of windows and staying with them, and then slipping them back." After the answer was given, the prisoner asked to have it stricken out and to be heard in argument, but the court refused to hear counsel, and overruled the motion. Thereupon the prisoner excepted. We have frequently held that the order in which proof is introduced is a matter largely in the discretion of the trial court, for which this court would not reverse the judgment save in very exceptional cases, of which this is not one. The statement attributed to the prisoner would have been proper evidence against him in chief, for it contains at least an implied admission of his guilt when he says that he "was caught at last." It is usual in quoting a statement made by another to require the whole of it to be offered in evidence before the jury, and it often happens that irrelevant expressions are thus introduced which are in themselves inadmissible. In such a case the court should be requested to separate the good from the bad; to retain what is proper, and to exclude what should not have been admitted. If that had been done in this case the

court would doubtless have directed the jury not to consider so much of the prisoner's statement as had reference to offences other than that of which he stood accused. *Cluverius Case*, 81 Va. 787.

We have thus gone through all the bills of exceptions which relate to the law of the case, and we have reached the conclusion that none of them were well taken, and that the case was fairly submitted to the jury.

It remains for us now to enquire upon the ninth bill of exceptions whether the proof is sufficient to sustain the verdict. The prosecutrix was one of four children of Adam Wise, a citizen and farmer of Augusta county. At the time of her seduction she was about sixteen years of age. She had attended the public schools for several years and was unusually well developed for her age. The accused was about forty-three or forty-four years old at the time the offence was committed. He was in the employment of Adam Wise as a farm hand, and during the frequent absence of his employer, who dealt also in cattle, he was left in charge. He had been with Mr. Wise for about eight years; was considered a man of good character, and in bad weather it devolved upon him to take the children to school. He lived with his wife in a house about three hundred yards from that in which the family of Mr. Wise resided. The stable and barn were about the same distance from the dwelling-house, the three houses constituting a triangle, the sides of which were nearly of equal length. Flick's wife was a delicate woman and they had no children, and he seems to have been fond of the children of his employer, and petted and caressed them, gave them little presents from time to time, and thus innocently, no doubt, in its inception, secured their affection, and acquired an influence over them. This intercourse continued for eight years, during which the prosecutrix grew from a little child of eight to a woman of sixteen years. The evidence is that he was in the habit of fondling and caressing her; that she would sit in his lap, pinch and tease him, and indulge in

many familiarities, which; while innocent in a child, become perilous in a woman. It is impossible to believe, as was suggested in argument, that the accused during all these years meditated the ruin of this girl, and deliberately sowed the seed of vice in her nature. It is more reasonable to believe that his relations with her in the beginning were those of a kindly man toward a child whose very frowardness is sometimes not without its attractions; but the time came, just when this record does not show, when the tempter entered his heart. He yielded, and was false to his wife, betrayed the trust which his employer had reposed in him, and ruined the life of the prosecutrix. If the story of their association were limited to the interviews in the barn at the time of or immediately preceding the fatal act by which she lost her virtue, we would have no hesitation in saying that there was no proof of seduction, and that the intercourse was the result of mutual lust and equal guilt, but, unhappily for the accused, such is by no means the case. It appears from the statement of the prosecutrix that a time came when his caresses and evidences of regard were indulged in secret, and by insensible degrees the innocent affection which had first been given to the child was transformed into the guilty love which he felt for the woman. It was a part of his duty to feed and care for the horses and other stock upon the farm. It was his duty to milk the cows. They were thus brought together at the barn, and there the crime was consummated.

In all this there is the picture of a man of mature years and a mere child. He, with knowledge of the world and the consequences of his act; she, in innocence and ignorance; for there is not a shadow of evidence to put a stain upon her character save that which connects her with the accused. By what precise wiles, arts, or artifices he at the fatal moment induced her to yield her person to his embraces, we cannot say.

If there can be degrees in a crime so shocking in its consequences as the seduction of an innocent woman, the greater guilt

would seem to attach to the married rather than to the unmarried man. His age, his experience, the duty he owes to his wife, all conspire to darken the offence, and he is unable to make reparation by marriage, as an unmarried man may do. From its inception his effort to win the affection of a woman other than his wife is criminal and infamous. Of necessity, therefore, it is as far as possible concealed from every eye, and if courts and juries are required to follow the "trail of the serpent" throughout his dark and devious course, truly the path of the seducer would be made easy.

That in all these years he had acquired a strong influence over her, that he engaged her affections, and that he protested his love for her, is conclusively shown. After he was arrested, he said that he "loved her more in a week than he did his wife in a lifetime." Upon such evidence, we are of opinion that the jury were warranted in the verdict which they found, and the motion to set it aside was properly overruled.

Upon the whole case, we are of opinion that the judgment of the Circuit Court should be affirmed.

BUCHANAN, J., dissenting:

I concur in the opinion of the court upon all the errors assigned except that based upon bill of exceptions No. 5. The defendant's instruction set out in that bill of exceptions, and which the court refused to give, was, in my opinion, a correct statement of law, and should have been given by the court. It instructed the jury how they ought to consider the prisoner's verbal confessions of guilt, and if they believed from the evidence that when the prisoner admitted his guilt, he only meant to confess that he was guilty of having criminal connection with the prosecutrix, and causing her to become pregnant, that they could not consider his confessions as corroborating evidence of the seduction charged. Corroborating evidence of the seduction was necessary to a conviction. The prisoner's confessions were

relied on as corroborating the prosecutrix on that point. He testified that, when he made the confessions proven, he did not intend to confess (and that he was not guilty of) the seduction charged. This was a vital question in the cause. The instruction stated the law correctly. There was evidence tending to sustain the theory upon which the instruction was based. Whether that evidence was true or not was a question for the jury. The prisoner, in my judgment, was clearly entitled to the instruction asked for, and the court erred in refusing it, unless the instruction given by the court in lieu thereof cured that error. 4 Minor's Insts. 919-920; *B. & O. R. Co.* v. *Polly, Woods & Co.*, 14 Gratt. 447-8; *Bertha Zinc Co.* v. *Martin*, 93 Va. 791-2.

The instruction given by the court stated the law as to the manner in which verbal confessions of guilt were to be considered almost in the very language of the prisoner's instruction, and covered that portion of the instruction fully, but it wholly omitted to instruct them at all upon the other point covered by the latter portion of the rejected instruction, which was equally material to the prisoner's case.

For this error, I think the judgment complained of ought to be reversed, and a new trial granted.

*Affirmed.*

CARDWELL, J., concurs with BUCHANAN, J.