## Richmond.

### LEAVELL AND OTHERS v. SMITH's EXECUTOR.

#### MARCH 28, 1901.

1. CHANCERY PRACTICE—*Bill by Executor to Recover Over-Payments— Demurrer.*—The overruling of a demurrer to a bill by an executor against devisees to recover a balance claimed on *ex parte* accounts by the executor ".regularly and properly settled before the commissioner of accounts and confirmed" does not decide that such *ex parte* settlement establishes the demand of the complainant.

2. EXECUTORS AND ADMINISTRATORS—*Ex Parte Settlements—Code, Sec. 2699.*—The reports of accounts referred to in section 2699 of the Code, which are to be taken as correct until properly surcharged or falsified, are "fiduciary settlements" in the legitimate acceptation of that term—*executorial* and *administration* accounts and the like, such as the commissioner of accounts has the authority to deal with, affecting assets, the due administration of which devolve upon the fiduciary by virtue of his office, and which are covered by his. oath and bond.

3. EXECUTORS AND ADMINISTRATORS—*Ex Parte Settlements—Evidence of Over-Payments.*—*Ex parte* accounts of executors or administrators are not evidence at all of over-payments by them, or that the claims stated in such accounts were debts justly due by the deceased, and chargeable upon his real assets. If an executor or administrator, after exhausting the assets which properly come into his hands, pays debts of the decedent out of his own estate, he can only claim to be substituted to the rights of the creditor, and must prove his demand by the same kind of evidence that would be demanded of the original creditor.

4. REAL ASSETS—*Charging Debts by Will.*—Debts of a testator are not charged upon his real estate by a declaration in his will that he desires all his just debts and funeral expenses paid.

Appeal from decrees of the Circuit Court of Prince William county, pronounced March 3, 1900, May 17, 1900, and

June 23, 1900, in a suit in chancery, wherein appellees were the complainants, and appellants were the defendants.

*Reversed.*

The opinion states the case.

*G. D. Gray* and *J. F. Strother*, for the appellants.

*J. P. Jeffries, C. M. White* and *Barbour & Rixey*, for the appellees.

WHITTLE, J., delivered the opinion of the court.

In May, 1899, the executors of Cornelius Smith, deceased, who had been one of the executors of William H. Browning, deceased, filed a bill in equity in the Circuit Court of Culpeper against the devisees and surviving executor, in which they allege that the accounts of said Cornelius Smith had been regularly settled before a commissioner of accounts, and confirmed by the court; that he had made a true and proper accounting of his acts and doings as executor, and, upon a final settlement confirmed at the May term, 1888, of the County Court, there was ascertained to be due him from the estate $2,602.74, as of June 16, 1888. The bill further alleges that the surviving executor had also regularly settled his accounts, from time to time, which showed that there were no assets in his hands, and that none would come into his hands, with which to pay said indebtedness. Copies of the will and settlement are exhibited, and the prayer of the bill is, that the court construe the will of William H. Browning, and order an account of the fee simple and annual rental value of the real estate in the hands of his devisees, and rent or sell the same to satisfy the demand asserted.

The case was afterwards removed to the Circuit Court of Prince William county.

The devisees demurred to the bill and filed two pleas, the first relying upon a limitation of five years, and the second upon a

limitation of ten years, as a bar to the claim. The court over-ruled the demurrer and rejected the pleas, as interposing no bar to the plaintiff's demand. The cause was thereupon referred to a commissioner to ascertain and report the accounts prayed for in the bill, and directing that he take as correct all settlements of the executors which had been duly made, reported, and confirmed according to chapter 121 of the Code of Virginia, unless said accounts should be surcharged and falsified by evidence adduced before him.

The commissioner reported the debt of plaintiffs, as a subsist-ing demand against the estate, for the payment of which the real estate in the hands of the devisees was responsible, and that the rents and profits would not discharge the same in five years.

The defendants, other than Grimsley, the surviving executor, excepted to the report:

1. Because the debt was not sustained by any evidence in the cause.

2. Because the *ex-parte* settlement exhibited with the bill was not evidence against the defendants, either *prima facie or other-wise;* and

3. Because the debt, if it ever existed, was barred by the sta-tute of limitations.

The court overruled the exceptions, confirmed the report, and decreed a sale of the real estate, and from that decree an appeal was allowed by one of the judges of this court.

Appellants insist that the Circuit Court erred in overruling their demurrer to the bill, the consequence being, as they main-tain, to hold that an *ex-parte* settlement established the demand of appellees. But such was clearly not the effect of overruling the demurrer. The bill alleges that the account showing the balance claimed was regularly and properly settled before the commissioner of accounts, and confirmed, but there is nothing on the face of the bill to warrant the conclusion that appellees intended to rely alone on these settlements to sustain their de-

mand. *Non constat,* what evidence they proposed to introduce on that subject. It would have been unusual, and was certainly unnecessary, for them to indicate in their bill how they expected to prove their case.

The bill states a case for the jurisdiction of a court of equity, and the demurrer was properly overruled. V. C., ch. 121, sec. 2668.

The second assignment of error is to the action of the court in rejecting the two pleas of the statute of limitations; and much of the argument of counsel, on both sides, was directed to a discussion of that subject. But in the view taken by this court it was not only premature, but impracticable for the Circuit Court to have passed intelligently upon that question at all, in the then condition of the case. The crucial point is raised, not by the pleas of the statute of limitations, but by exceptions to the commissioner's report, based upon the direction of the court that the *ex-parte* accounts of the executors, settled and confirmed according to chapter 121 of the Code, should be taken as correct, unless surcharged and falsified by evidence adduced before him.

Section 2699 is as follows: "The report, to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the same may, in a suit, in proper time, be surcharged or falsified."

It seems to have been ingrafted on our statute law, in its present form, for the first time at the revisal of 1849 (Code of 1849, ch. 132, sec. 23, p. 552), and is simply declaratory of the pre-existing rule as to the credit to which such settlements were entitled.

In the case of *Anderson* v. *Fox,* 2 Hen. & Munf., 245, decided in 1808, there was a *quære* as to the weight to be given to such settlements. Judge Tucker, in maintaining that they were to be taken as *prima facie* correct, said: "To call in question a practice sanctioned by the Supreme Court of the country for perhaps a century, and never, that I know of, drawn in question

before the present occasion, is what I cannot presume to do. It ought, therefore, I conceive, to be taken as *prima facie* evidence of the several charges and credits therein contained."

The next year, in the case of *Atwell's Adm'r* v. *Milton*, 4 Hen. & Mun. 253, the court unanimously adopted the view of Judge Tucker in the previous case, and it has been consistently followed by subsequent decisions of this court, both before and since the enactment referred to, to the present time. *Wall's Ex'ors* v. *Greesom*, 4 Munf. 110; *Wyllie* v. *Venable's Ex'or*, 4 Munf. 369; *Wimbish* v. *Rawlins*, 76 Va. 48; *Robinett* v. *Robinett*, 92 Va. 124.

It must be observed, that this principle applies to "fiduciary settlements" in the legitimate acceptation of that term, to *administration* and *executorial* accounts, and the like, such as the commissioner of accounts has authority to deal with, affecting assets, the due administration of which devolve upon the fiduciary by virtue of his office, and which are covered by his oath and bond; but it extends no further.

The distinction is clearly drawn in the case of *Gist's Adm'r* v. *Cockey*, 7 Harris & J. (Md.) 134: "Accounts settled by executors or administrators in the orphans court, are *prima facie* evidence, to show the situation of the personal estate of the deceased, in all controversies between the executor or administrator and the representatives of the deceased, and in actions by creditors against the heirs or devisees of the deceased, and to warrant a sale of the real estate by the decree of a court of chancery. But such accounts are not evidence at all of over-payments by executors or administrators, or that the claims stated in them were debts justly due by the deceased, and chargeable upon his real assets, either at law or in equity. If, after exhausting the personal assets, an executor or administrator does pay debts of the deceased out of his own funds, he has a right only to be substituted in the place of the creditors whose debts he pays,

and must establish his claim by the same kind of testimony which would be demanded of them."

The court goes on to say that a contrary principle would place heirs and devisees at the mercy of executors and administrators, who would in fact administer the real, as well as the personal assets. They are only authorized and required to pay the debts of the decedent out of the personal estate; and if, transcending the limits of their duty, they see fit to pay debts with their own means, all they can ask or expect is, to be substituted to the rights of the creditors whose demands they have liquidated. It follows that such claims must be established, as to the heir or devisee, by the same kind of testimony which might be demanded of the original creditors.

The case of *Street's Heirs* v. *Street*, 11 Leigh 498, is identical in principle with the case at bar. The court there clearly draws the line of demarkation between settlements which are *executorial* and *those which are not*. In discussing the right of an administrator, who had exhausted the personal assets and paid debts of the decedent out of his own funds, to be reimbursed out of real estate descended, the court says; "His claims upon the real estate are not executorial, and they can only be sustained by regarding him in his true light, and substituting him to the rights of the creditors whom he has paid. He stands in their shoes, and must establish his demand precisely as they must have done."

The principle enunciated in this case is the accepted doctrine in Virginia, and is conclusive of the case in judgment.

The will does not charge the debts upon the real estate. The language: "It is my will and desire that all my just debts and funeral expenses be paid," is quite similar to the provision passed on by this court in *Gaw* v. *Huffman*, 12 Gratt. 628, where it was held that the debts were not thereby charged upon testator's real estate.

Nor does the will empower the executor to dispose of the *corpus* of the estate or charge it with debt.

In a suit of this character, it was error to direct the commissioner to take as correct the *ex-parte* accounts of the executor. He occupied no higher plane than the creditors whose debts he is alleged to have paid, and the plaintiffs should have been required to establish their demand by satisfactory evidence, just as the creditors must have done if they had been seeking to enforce their collection.

For this error, the decree complained of must be reversed, and the case be remanded to be further proceeded with in accordance with the foregoing views.

The court expresses no opinion on the subject of the statute of limitations, as it does not appear to what extent that question may be influenced by evidence not now in the record.

*Reversed.*