TAYLOR V. COMMONWEALTH.

June 10, 1915.

1. EVIDENCE—*Carbon Copy of Writing Duplicate Original.*—A carbon copy of a paper made by the same impression of type as the original and at the same time may be regarded as a duplicate original and may be introduced in evidence without notice to the opposite party to produce the original. This is especially true where it is shown that the original has been lost.

2. EVIDENCE—*Indictment—Letter of Defendant's Attorney—Intoxicating Liquors.*—A letter to a defendant from his attorney advising him as to the law governing the delivery of liquor in dry territory is not admissible on the trial of the defendant for a violation of the laws of the State in respect to an improper delivery.

3. EVIDENCE—*Admissibility—General Objection.*—A general objection to admission of evidence should be overruled if the evidence is admissible for any purpose.

4. EVIDENCE—*Admissibility—Other Similar Acts—Guilty Knowledge—Impeachment.*—A defendant in a prosecution for a violation of the liquor laws having testified that he had no reason to believe that the order upon which he delivered the liquor was not the genuine order of the consignee, it was competent for the Commonwealth to show that he had delivered other liquors, at other times, to other parties, upon orders in the same handwriting as that for which he was indicted, in order to show guilty knowledge on his part, and to contradict him.

5. STATUTE—*Constitutionality.*—A statute will not be declared to be unconstitutional unless it is plainly and palpably so. To doubt upon the subject is to affirm the constitutionality of the statute.

6. INTOXICATING LIQUORS — *Interstate Commerce — Webb-Kenyon Act—Constitutional Law.*—What is known as the Webb-Kenyon Act of Congress is a valid and constitutional enactment by Congress of power conferred upon it by the Federal Constitution. By this act the shipment of liquors of all kinds from one State into another in violation of the laws of the latter is prohibited.

Error to a judgment of the Circuit Court of Accomac county.

*Affirmed.*

The opinion states the case.

*Jeffries & Jeffries* and *Jeffries, Wolcott, Wolcott & Lankford,* for the plaintiff in error.

*Jno. Garland Pollard, Attorney-General* and *Christopher B. Garnett, Assistant Attorney-General,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

The indictment found against Taylor in this case shows that he is an operator, agent, clerk and occupant of a store room and office of the Baltimore, Chesapeake and Atlantic Railway Company, in Pungoteague magisterial district, in the county of Accomac, in which district the sale of wine, ardent spirits, spirituous and malt liquors, intoxicating liquors, or any mixture thereof was prohibited by law; that he did on the —— day of May, 1913, in the said district, in the county aforesaid, unlawfully deliver wine, malt liquors and intoxicating spirits to a person other than the person to whom said wine, ardent spirits and intoxicating liquors were billed and shipped, or in good faith addressed, or to said consignee's employee upon the written order of said consignee, to-wit, a package of ardent spirits and intoxicating liquors billed, shipped and addressed to Tom Moore; and that he, the said Taylor, did then and there unlawfully deliver the said package to one James Metcalf, said Metcalf not being the person to whom the said package was billed, shipped, and in good faith addressed, or the employee of the said Tom Moore, and without the written

order of the said Tom Moore, against the peace and dignity of the Commonwealth.

To this indictment he pleaded not guilty, a trial of the issue joined upon that plea resulting in a verdict and judgment assessing a fine against him of $50, which the court refused to set aside, overruled the defendant's motion in arrest of judgment, and entered judgment against him for the payment of the fine, and in addition thereto sentenced him to confinement in the jail of Accomac county for thirty days; and the case is before us upon a writ of error to that judgment.

A number of errors were assigned during the progress of the trial to the rulings of the court admitting testimony over the objection of plaintiff in error.

The first bill of exceptions is to the admission in evidence of a copy of the manifests of the steamer "Eastern Shore," made up for the 11th of May, 1913, which was introduced while Edgar Northam, the assistant purser of the steamer was on the stand. The manifest showed that on that day there had been consigned to Tom Moore two barrels of liquor weighing 500 pounds, two boxes of liquor weighing 500 pounds, and one barrel of beer weighing 250 pounds. The contention is that as these manifests were not made by Taylor, or under his direction, they should not have been received as evidence against him.

It appears that the manifests were made on an Underwood billing machine, in triplicate, by the assistant purser, whose duty it was to take the shippers' bills of lading, check the freight for each wharf and make off the manifests therefrom. The original copy was turned in to the auditor of the company, the second sent to the agent in Baltimore, and the third to the agent on the wharf, the defendant Taylor. The witness testified that he left a copy with F. C. Taylor, the agent at Boggs Wharf, and that it was checked as delivered.

We think that there was no error in the ruling of the court admitting this testimony, upon the authority of the case of *C. & O. Ry. Co.* v. *Stock*, 104 Va. 97, 51 S. E. 161, where it was held that, "A carbon copy of a paper made by the same impression of type as the original and at the same time (but not a letter press copy) may be regarded as a duplicate original, and may be introduced in evidence without notice to the opposite party to produce the other." The case before us is strengthened by the fact that the original is conclusively shown to have been lost.

Bill of exceptions No. 2 is to the ruling of the court refusing to admit in evidence a letter offered by the defendant from his attorney in Baltimore, advising him as to the law governing the delivery of liquor. The letter was written with respect to a consignment made some months prior in point of time to that which was the subject of investigation in this case, but we shall not place our ruling upon that narrow ground, as we think the testimony wholly irrelevant and immaterial. See Bishop's New Cr. L., cl. 3, sec. 294, and authorities there cited.

During the progress of the trial the accused was put upon the stand as a witness in his own behalf and upon his cross-examination was shown a number of other orders than the one signed by Tom Moore and the one referred to in the indictment, and the witness was interrogated with respect thereto, and they were offered in evidence; to all of which the accused, by counsel, objected; but the court overruled the objection and permitted the questions to be asked and the orders to be introduced; and this ruling is the subject of the third bill of exceptions.

From the evidence of several witnesses it appears that about the same time the witness delivered the liquors consigned to Tom Moore, he delivered a great number of other liquors upon orders in the same handwriting to Metcalf or Beloate. The objection to the evidence was a general one,

and if it were admissible for any purpose the ruling of the trial court must be maintained.

There are two theories urged with reference to the crime defined by the statute. One is that the crime belongs to that class which are indictable irrespective of guilty knowledge, in which case the agent who delivered the intoxicating liquor to any person other than the person to whom it was addressed, or to his employee upon the written order of the consignee, would be guilty of the offense charged in the statute, whether he had reason to believe that the person to whom the liquor was delivered was the *bona fide* consignee or his employee, or not. On the other hand it is contended, and this view is maintained by the defense, that the crime denounced by the statute is not indictable irrespective of intent, thereby making the *scienter* relevant. Upon that theory, it would seem that the evidence objected to was properly admitted.

In *Cluverius* v. *Commonwealth,* 81 Va. 787, the objection to the admission of evidence was a general one. The prisoner did not ask the court to place any limitation upon the effect of the evidence, and the court held, citing Taylor on Evidence, Vol. 2, p. 1157, that where evidence was offered for a particular purpose, if the judge pronounces in favor of its general admissibility in the cause, the court will support his decision, provided the evidence be admissible for any purpose. Upon this point this case has been frequently cited with approval by this court. *Flick's Case,* 97 Va. 775, 34 S. E. 39; *Meyers* v. *Falk,* 99 Va. 380, 38 S. E. 178; *Wright's Case,* 100 Va. 865, 65 S. E. 19.

But in any event we think the evidence was admissible as tending to discredit the testimony of Taylor, who testified in his own behalf, and who had stated that he had no reason to believe that the shipment to Tom Moore was not made in good faith; and the tendency of this evidence was to show that Taylor did have reason to believe, and the

115

evidence was relevant and proper for that purpose. The objection to its introduction being a general one, it falls within the influence of the principle announced in the *Cluverius Case, supra.*

The fourth bill of exceptions is to the introduction of a letter from C. W. Chambers to the defendant. We think this letter was clearly admissible, if for no other purpose, as impeaching the good faith of Taylor and affecting his credibility as a witness, he having testified, as we have already said in connection with bill of exceptions No. 3, that he had no reason to question the good faith of the shipment to Tom Moore. In this case also, the objection to the admissibility of the testimony was general, and if admissible for any purpose the objection to its admission must be overruled.

Bills of exceptions 5, 6 and 7 present similar questions and need not be specifically discussed.

We have examined the instructions offered, given and refused, and think that those given fairly submit the issues to the jury, and that with respect to those which the court refused it committed no error.

Upon the evidence we are of opinion that the offense was clearly proved, and that the judgment must be affirmed, unless, as the plaintiff in error contends, the act under which he was prosecuted is unconstitutional as trenching upon the authority of Congress to regulate commerce; and this brings us to the consideration of the statute known as the Webb-Kenyon law, which we shall briefly consider.

We need not enlarge upon the principles which govern this court in passing upon the constitutionality of a law. The statute is not to be annulled unless its repugnancy to the Constitution be palpable and plain, and to doubt upon the subject is to affirm the constitutionality of the law in question.

In *Bowman* v. *Chicago, &c. Ry. Co.*, 125 U. S. 465, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700, the supreme court held that a statute of the State of Iowa forbidding any common carrier to bring within that State intoxicating liquors from any other State or territory, without having procured the certificate required by the State statute, was a regulation of commerce among the States, and therefore void; and this decision was approved and extended in *Leisy* v. *Hardin*, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, where the court held, that "the power to prescribe the rule by which that commerce is to be governed is a power complete in itself, acknowledging no limitations other than those prescribed in the Constitution. It is coextensive with the subject on which it acts, and cannot be stopped at the external boundary of a State but must enter its interior and must be capable of authorizing the disposition of those articles which it introduces so that they may become mingled with the common mass of property within the territory entered."

It was by these decisions established that the State could not control the disposition of intoxicating liquors imported from another State or territory so long as they remained in the original package. This situation led to the passage of what is known as the Wilson bill, which reads as follows:

"That all fermented, distilled or other intoxicating liquors or liquids transported into any State or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such State or territory, be subject to the operation and effect of the laws of such State or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such State or territory, and shall not be exempted therefrom by reason of being introduced therein by original packages or other-

wise." Act August 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1913, sec. 8738).

This statute led to further litigation, and in *Rahrer's Case,* 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, the Wilson bill was attacked as an attempt to delegate to the States the power to regulate commerce, and the court held that no such delegation had been attempted by Congress, but that it had "taken its own course and made its own regulation, applying to these subjects of interstate commerce one common rule whose uniformity is not affected by variations in State laws in dealing with such property. * * * No reason is perceived why, if Congress chooses to provide that certain designated subjects of interstate commerce shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case, it is not within its competency to do so."

And in *Rhodes* v. *Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088, the same statute is construed as to the phrase, "arrival in such State," and the court held that this language meant arrival in the hands of the consignee, and that consignments of liquor which had been shipped from one State into another were not subject to State police laws while being moved from the platform of the railway station to a freight warehouse. This decision postponed the taking effect of laws enacted under the police powers of the State until the liquor had been delivered by the carrier to the consignee.

These cases marked a step and an important one in the exercise by the States of their police power with respect to the importation of intoxicating spirits. In the beginning, as we have seen, the liquors imported did not pass under the control of the State until they had become mingled with the common mass of property in the territory entered, while by virtue of the Wilson bill and the decisions construing it, the control of the State was accelerated and

was established when the imported liquors arrived in the State—that is to say, had been delivered to the consignee, though still remaining in the original package. Under the Wilson bill it is held that a State law is invalid, in so far as it attempts to prevent residents of a State from importing liquors for their own use (*Vance* v. *Vandercook*, 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100) ; and that a State prohibition law cannot affect cash on delivery shipments of liquor to persons who purchase the same for their own use and consumption (*American Express Co.* v. *Iowa*, 196 U. S. 133, 25 Sup. Ct. 184, 49 L. Ed. 417).

In order to meet these decisions, Congress passed what is known as the Webb-Kenyon act, so much of which as is pertinent to the matter under discussion is as follows:

"An act divesting intoxicating liquors of their interstate character in certain cases.

"Be it enacted, etc., That the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented or other intoxicating liquor of any kind, from one State * * * into any other State * * * or from any foreign country in to any State * * * which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, * * * is hereby prohibited."

This statute has been before the courts of many States and has been unanimously upheld. *Atkinson* v. *Southern Express Co.*, 94 S. E. 444, 78 S. E. 516, 48 L. R. A. (N. S.) 349; *State* v. *Grier*, (Del. Gen. Sess.), 88 Atl. 579; *State* v. *U. S. Exp. Co.*, (Sup. Ct. Iowa), 145 N. W. 451; *State* v. *Doe*, 92 Kan. 212, 139 Pac. 1169; *Van Winkle Co.* v. *State*, (Sup. Ct. Del.), 91 Atl. 385; *Am. Exp. Co.* v. *Beer*, (Sup. Ct. Miss.), 65 So. 575; *Southern Exp. Co.* v. *State*, (Sup. Ct. Ala.), 66 So. 115; *Adams Exp. Co.* v. *Com.*, 160 Ky. 66,

169 S. W. 603; *Palmer* v. *Southern Exp. Co.*, 129 Tenn. 116, 165 S. W. 236.

The constitutionality of this law has also been upheld in numerous cases in the Federal courts. See *U. S.* v. *Oregon, &c. Ry.* (D. C.) 210 Fed. 378; and in *State of West Virginia* v. *Adams Exp. Co.* (C. C. A.) 219 Fed. 794, in the Circuit Court of Appeals for the Fourth Circuit, Judge Woods, delivering the opinion, after an exhaustive examination of the entire subject, both upon principle and authority, upholds the validity of the Webb-Kenyon law in a convincing opinion.

When we consider the broad and comprehensive terms by which Congress is clothed with the power to regulate commerce, the opinions delivered in cases in the supreme court which we have cited, the strong and unbroken current of authority in the appellate courts of many States, concurred in by such inferior Federal courts as have had the question under consideration, we are not only unable to say that the act in question is plainly unconstitutional, but we are satisfied that it is a valid and constitutional exercise of legislative authority on the part of Congress. And we deem it not amiss to say, that it is a subject of congratulation to find that the Congress has been responsive in this matter to the will of the people, and has co-operated with the States in their effort to regulate commerce in intoxicating liquors, a subject upon which there is substantial unanimity of opinion, the diversity existing not as to the object in view but as to the means most efficient in its attainment.

The judgment of the circuit court of Accomac is affirmed.

*Affirmed.*